UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EMMETT PETERSEN,

               Plaintiff,                                   Case No. 1:10-cv-12

v.                                               HON. JANET T. NEFF

WEST MICHIGAN COMMUNITY
MENTAL HEALTH et al.,

               Defendants.

_____/


## OPINION AND ORDER

This case arises out of Defendant West Michigan Community Mental Health's (WMCMH) alleged wrongful termination of Plaintiff's employment. Plaintiff filed suit in Mason County Circuit Court (Def. Not. of Removal, Dkt 1 ¶ 2) against his current employer, WMCMH, its Board Chairperson and its Executive Director. Defendants removed the case to this Court based on federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441 (*id.* at ¶ 5). Defendants now seek dismissal of the action under FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted (Def. Mot., Dkt 26). Having considered the parties' briefs and supporting documentation, the Court grants Defendants' motion.

## I. BACKGROUND

The key facts in this case are undisputed. Plaintiff was a longtime employee of WMCMH before being discharged on January 22, 2009 (Compl. ¶ 4; Pl. Br., Dkt 28 at 1). Plaintiff was then rehired by WMCMH, in a different position, at a much lower pay rate, on March 7, 2009 (Compl. ¶ 6; Pl. Br. at 1). As a condition of his rehiring, Plaintiff signed a "Release and Waiver" agreement

that released WMCMH of liability for all claims arising from Plaintiff's former employment with WMCMH (*id.*; Def. Br., Dkt 27, Ex. 1). Under the terms of his rehiring, Plaintiff was an "at will" employee for six months following the date of hire, after which Plaintiff's employment would be governed by the collective bargaining agreement (Def. Br. Ex. 1a). Currently, Plaintiff is still employed by WMCMH, and the terms of his employment are controlled by the collective bargaining agreement (Def. Br. Ex. 1a; Def. Reply, Dkt 31 at 3).

In his Complaint, Plaintiff seeks reinstatement and damages for wrongful termination of his original employment with WMCMH (Compl. 24-25). Plaintiff's Complaint alleges three counts: breach of implied employment contract (Count I) (*id.* at 3); discharge in violation of public policy (Count II) (*id.* at 21); and a violation of procedural due process under both the Fourteenth Amendment to the United States Constitution and Article I, Section 17 of the Michigan Constitution (Count III) (*id.* at 22), pursuant to 42 U.S.C. § 1983.

## II. OVERVIEW

Defendants seek dismissal of Plaintiff's complaint for failure to state a valid claim. As recently stated by the Supreme Court, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009). Generally, this means that a court must grant a defendant's Rule 12(b)(6) motion where it is obvious from the face of the complaint that the plaintiff is not entitled to relief. *Id.* at 1249. Here, Defendants contend that Plaintiff's complaint is barred by the Release and Waiver executed on March 7, 2009 (Def. Br. 1). Plaintiff responds that his claims are not barred "because the agreement containing the Release and Waiver lacked consideration and was obtained under duress" (Pl. Br. 1). Thus, as Plaintiff does not dispute that a valid release agreement would bar his claims, the

disposition of this motion turns on the Court's holding as to the validity of the Release and Waiver.

Because the Court is not persuaded by Plaintiff's argument that the Release and Waiver is invalid,

Defendants' motion to dismiss is granted with respect to Plaintiff's federal claim.

## III.  ANALYSIS

### A.  *Plaintiff's Arguments of Lack of Consideration*

Plaintiff first contends that the Release and Waiver is unenforceable because the parties'

agreement lacked consideration and mutuality of obligation (Pl. Br. 2-4).  The thrust of Plaintiff's

argument is that in giving up his claim against WMCMH by the Release and Waiver, he was not

given anything in return (*id.*).  Specifically, he argues that WMCMH's job offer did not constitute

valid consideration because under the terms of his new employment, Plaintiff could have been fired

in the first six months for any reason or no reason at all (*id.* at 3).  The fact that WMCMH could

terminate Plaintiff's job at any time during the probationary period of employment meant, according

to Plaintiff, that WMCMH's alleged consideration, the promise of re-employment, was "illusory"

(*id.*).

Plaintiff's argument lacks merit.  Under Michigan law, "[p]romissory words are not nullified

by making the promise conditional on some event within the promisor's own power, if at the same

time the promisor impliedly promises to make a reasonable effort to bring the event about or to use

good faith and honest judgment in determining whether or not it has in fact occurred." *Gen. Motors

Corp. v. Dept. of Treasury*, 644 N.W.2d 734, 739 n.10 (Mich. 2002) (quotation omitted).  In

situations "[w]here a party to a contract makes the manner of its performance a matter of its own

discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly

and in good faith." *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App.

1975).  Here, the fact that Plaintiff was an at-will employee for the first six months of his re-employment did not render WMCMH's promise of re-employment illusory.  It can be fairly inferred, both from the circumstances surrounding the execution of the Release and Waiver and Michigan's good-faith requirement in such cases, that WMCMH fully intended to use good faith and reasonable discretion in its offer to re-employ Plaintiff.

Moreover, it is a basic principle of contract law that "[w]ant of mutuality in the inception of a contract may be remedied by subsequent conduct of the parties or by the execution of the agreement." *Adams v. Harrington Hotel Co.*, 117 N.W. 551, 552 (Mich. 1908).  Even if a party's promise is illusory when the contract is signed, performance on the contract by that party may serve to cure the defect in that original promise and create a binding contract.  *Bastian v. J.H. Du Prey Co.*, 245 N.W. 581, 581 (Mich. 1932); *see also* 17A Am. Jur. 2d *Contracts* § 25 (2010) (stating that "if [one party] has fully performed a contract on his or her part, even though he or she could not originally have been compelled to do so, the [other party] cannot avoid liability for a breach of the contract on the ground of lack of mutuality").  Thus, even if WMCMH's promise was illusory at the time of contracting, this defect was cured by the time the complaint was filed, as WMCMH did not arbitrarily terminate Plaintiff's employment during the probationary period, and Plaintiff's employment is currently governed by the terms of the collective bargaining agreement.  It follows that Plaintiff is now bound by the Release and Waiver.  *See, e.g.*, *Feiler v. Midway Sales, Inc.*, 108 N.W.2d 884, 887 (Mich. 1961) ("Whether or not an enforceable obligation arose at the moment appellant gave plaintiffs its letter, upon performance of the conditions set forth therein by plaintiffs in reliance upon appellant's promise, the obligation became enforceable against appellant.").

Plaintiff also argues that the Release and Waiver lacks consideration because he was eligible for rehiring by WMCMH without signing it (Pl. Br. 5).  Thus, Plaintiff contends that he did not receive any consideration from WMCMH other than the ability to be rehired, which he already had before signing the Release and Waiver (*id.*).  This argument is logically flawed.  Plaintiff incorrectly equates the terms "entitled" and "eligible" (*see id.* at 5).  The fact that Plaintiff was eligible for employment by WMCMH before signing the Release and Waiver did not mean that he was entitled to have the job.  WMCMH made the offer of employment contingent upon Plaintiff's acceptance of the terms of the Release and Waiver (*see* Def. Br., Exs. 1a, 1b).  Therefore, Plaintiff cannot now reasonably argue that his re-employment was not valid consideration tendered in exchange for his acceptance of the Release and Waiver.

B.  *Plaintiff's Arguments of Unconscionability*

Plaintiff argues that the Release and Waiver is unconscionable because he did not knowingly and voluntarily sign it, as his acquiescence to its terms was the result of economic duress (Pl. Br. 5-9).  In defense of this position, he contends that Defendants' reliance on *Adams v. Phillip Morris, Inc.*, 67 F.3d 580 (6th Cir. 1995), is misplaced (*id.* at 5-7).

In *Adams*, the plaintiff challenged a release on the grounds that he was forced to sign it under extreme duress.  *Adams*, 67 F.3d at 583.  The Sixth Circuit Court of Appeals held that the release of a federal cause of action in the employment context is valid as long as the release is knowingly and voluntarily executed.  *Id.*  In determining whether an agreement is entered into knowingly and voluntarily, the court stated that there are five factors to consider: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity

of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.*

When considering the impact that a plaintiff's economic circumstances should have on this analysis, the court held that the fact that a plaintiff may feel economic pressure to sign a release agreement does not rise to the level of economic duress. *Id.* The rationale for this holding was clarified in *Dorn v. Gen. Motors Corp.*, 131 Fed. App'x 462, 468 (6th Cir. 2005). The court explained that a policy of invalidating release agreements in wrongful discharge disputes on the grounds of economic duress would inevitably lead to the invalidation of the vast majority of these types of agreements. *Id.* It can generally be assumed that employees will feel economic pressure to accept a settlement in these types of cases. *Id.*

In attempting to defend his economic duress argument, Plaintiff argues that the *Adams* and *Dorn* holdings do not apply in this case (Pl. Br. 5-7). He acknowledges that these holdings stand for the general proposition that an "argument of economic duress is not acceptable to prove that [a] release was not knowingly and voluntarily executed" (*id.* at 6). Plaintiff argues, however, that this holding was applied in the context of wavier and release agreements where the employer provided a severance package or payment in exchange for the employee's release of claims (*id.* at 5-7). Here, because the consideration was re-employment, Plaintiff argues that the *Adams* holding does not apply (*id.* at 6-7). The Court, however, does not agree with Plaintiff's unduly narrow reading of *Adams* and *Dorn*. There is nothing in the *Adams* opinion tending to suggest that the court intended its holding to apply so narrowly, nor would it be logical for this Court to so hold based on such a minor distinction. Moreover, the *Dorn* court clearly indicated that the *Adams* holding was intended to apply even in situations where the consideration offered for the release was re-employment rather than a severance package. *See Dorn*, 131 Fed. App'x at 468 (quoting *Parker v. Key Plastics, Inc.*,

68 F. Supp. 2d 818, 827 (E.D. Mich. 1999)) (reasoning that if economic duress were "deemed sufficient to overcome an otherwise knowing and voluntary release, it is difficult to imagine a case in which a release signed in exchange for *reinstatement* would ever be enforceable") (emphasis added). Therefore, contrary to Plaintiff's argument, the holdings of *Adams* and *Dorn* clearly apply to this case.

Plaintiff further argues that even if the *Adams* holding is applied in this case, the Release and Waiver is still unconscionable because it cannot withstand the scrutiny of the five-factor test set out in that case (Pl. Br. 7-9). He argues that the first factor in *Adams*, Plaintiff's experience, background, and education, points to invalidity of the Release and Waiver (*id.* at 7). Plaintiff notes that, at the time he signed the release, his area of expertise for the last many years had been in helping mentally disabled individuals find employment (*see id.* (noting that before his discharge, Plaintiff was "in charge of a crew of eleven staff members and supervised the developmental training of seventy clients")). As to the second factor, the amount of time Plaintiff had to review the waiver, Plaintiff indicates that he only had a little over a week to review the Release and Waiver (*id.* at 7). Plaintiff also argues that the fourth factor, the consideration for the waiver, favored invalidity because of his view that the consideration itself was invalid (*id.* at 8). Finally, Plaintiff urges that the totality of the circumstances factor also favors invalidity (*id.* at 8-9). He points to several circumstances in his life at the time he signed the Release and Waiver that made his signing of the waiver an economic necessity (*id.*).

The Court is not persuaded by Plaintiff's unconscionability argument. Here, to the contrary, the *Adams* factors point in favor of the validity of the Release and Waiver. The fact that Plaintiff had significant supervisory experience at the time he signed the release, and was given a full week

to review the straightforward, one-page agreement before signing it, tend to show that the Release and Waiver was voluntarily and knowingly executed.  Also, as previously discussed, Plaintiff's arguments regarding the invalidity of the consideration are equally unpersuasive.  Finally, although Plaintiff's personal economic circumstances were unfortunate and placed him under significant economic pressure to sign the Release and Waiver, the Court does not find these circumstances sufficient grounds to hold the Release and Waiver invalid.  *See Parker*, 68 F. Supp. 2d at 827 ("*Adams* holds that such economic pressure, standing alone, is insufficient to render a settlement agreement unenforceable.").

## IV.  CONCLUSION

Therefore, because the Court finds no plausible grounds for holding the Release and Waiver invalid, the Court grants Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6) as to Plaintiff's federal claim, namely, violation of 42 U.S.C. § 1983 as a result of the violations of the procedural due process guarantees of both the Fourteenth Amendment to the United States Constitution and Article I, Section 17 of the Michigan Constitution (Count III).  Pursuant to its discretionary authority under 28 U.S.C. § 1367(c)(3), the Court declines supplemental jurisdiction over the state-law claims, namely, breach of implied employment contract (Count I) and discharge in violation of public policy (Count II).[1]  These state-law claims are therefore dismissed without prejudice.  As the Court's decision resolves all pending claims, a Judgment will be entered consistent with this Opinion and Order.  *See* FED. R. CIV. P. 58.  Accordingly:

---

[1] Plaintiff's Complaint is not entirely clear whether the public policy allegedly violated is based in state or federal law (*see* Compl. 21-22).  The Court presumes that the Plaintiff is referring to Michigan public policy; however, to the extent that Plaintiff claims that WMCMH's actions violated federal public policy, the claim is dismissed pursuant to FED. R. CIV. P. 12(b)(6).

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt 26) is GRANTED.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and therefore, these claims are DISMISSED WITHOUT PREJUDICE.

DATED: August 10, 2010                    /s/ Janet T. Neff                              
                                          JANET T. NEFF
                                          United States District Judge